UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA


| | | |
|---|---|---|
| RONALD L. HALSEY and DEBBIE L. HALSEY, | ) ) ) | |
| Plaintiffs, | ) ) | 3:06-cv-00205 JWS |
| vs. | ) ) | ORDER AND OPINION |
| ADMINISTRATOR, WAGE AND HOUR DIVISION, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) | [Re: Motions at Dockets 18 and 25] |
| Defendant. | ) ) | |

## I. MOTIONS PRESENTED

At docket 18, plaintiffs Ronald Halsey and Debbie Halsey move for summary judgment pursuant to Federal Rule of Civil Procedure 56. At docket 23, defendant Administrator of the Wage and Hour Division, United States Department of Labor, opposes plaintiffs' motion.[1] Defendant cross-moves for summary judgment at docket 25. At docket 26, plaintiffs reply to defendant's opposition. At docket 27, plaintiffs' oppose defendant's cross-motion for summary judgment. Oral argument was requested and was heard on November 16, 2007.

---

[1]Because this is an appeal of a final decision by the United States Department of Labor, the Secretary of Labor Elaine L. Chao is the proper defendant in this case.

## II. BACKGROUND

Ronald and Debbie Halsey are owners of a commercial set net salmon fishing operation in Cook Inlet, Alaska. During the 2001 and 2002 fishing seasons, Samuel Gammon worked as a crew person for the Halseys' fishing operation. Gammon was 13 years old during the 2001 season and 14 years old during the 2002 season. The Halseys knew Gammon's age. Gammon helped set and pull the nets at the opening and closing of fishing periods, picked fish from the nets and placed them in the 22-foot fishing boat, and sometimes unloaded the fish when the boat came to shore. Gammon did not transport the fish to the fish processor for sale.

For the 2001 fishing season, the Halseys' gross revenue from the sale of their catch was approximately $13,477. In 2002, the gross sales revenue was about $11,357.[2] In 2002, the Halseys sold their season's catch to Ocean Beauty Seafoods, which combined the Halseys' fish with those of other Cook Inlet fishermen. Ocean Beauty Seafoods sent most of the combined catch to Seattle, Washington, for processing.

The Halseys paid Gammon a percentage of the gross revenue as his crew share. Gammon's pay of $750 for the 2001 season and $750 for the 2002 season was reported to the Internal Revenue Service as non-employee compensation.[3] The Halseys also paid for Gammon's commercial fishing license and provided him with a life jacket and other fishing gear.

On July 12, 2002, a large wave capsized the Halseys' fishing boat while the Halseys, Gammon, and Cody McVay, another crew member, were pulling the nets from the water. The Halseys and McVay survived. Samuel Gammon died as a result of the accident.

On October 2, 2002, the Administrator of the Wage and Hour Division assessed a civil money penalty in the amount of $11,700 against the Halseys for employing a

---

[2] Administrative Record at HALS 0000132-0000133, doc. 7. Hereinafter, references to the administrative record will simply refer to the bates numbers.

[3] HALS 0000081 and 0000086.

-2-

minor in violation of the child labor provisions of the Fair Labor Standards Act ("FLSA").[4] The assessed penalty included $700 for the Halseys' illegal employment of Gammon in 2001 when he was 13 years old, and $11,000 for the Halseys' illegal employment of Gammon in 2002 when he was 14 years old and drowned. The Halseys timely filed an exception to the assessment and requested a hearing before an Administrative Law Judge ("ALJ"). The parties subsequently filed cross-motions for summary judgment. By order dated October 24, 2003, the ALJ granted the government's motion for summary judgment on liability, finding that 1) Gammon's employment on the fishing vessel was covered under the FLSA's child labor provisions, 2) Gammon's work for the Halseys' fishing enterprise violated the FLSA's child labor provisions, and 3) Gammon was an employee for purposes of the FLSA.[5]

By order dated February 2, 2004, the ALJ affirmed the civil money penalty of $11,700.[6] In the order, the ALJ first noted that the Halseys did not contest the $700 penalty for their illegal employment of Gammon in 2001 when he was 13 years old. The ALJ then considered the factors set forth in 29 C.F.R. § 579.5 for determining the penalty for the Halseys' employment of Gammon in 2002 when he was 14 years old and died. The ALJ found that the facts of this case warranted the maximum statutory penalty of $11,000.

The Halseys appealed the ALJ's decisions to the Administrative Review Board ("ARB"). By order dated September 29, 2005, the ARB affirmed both "the ALJ's holding that the Halseys violated the child labor provisions of the FLSA and the ALJ's imposition of a civil money penalty of $11,700 for the violations."[7]

---

[4]29 U.S.C. §§201-219.

[5]HALS 0000199.

[6]HALS 0000300.

[7]HALS 0000495; *Administrator v. Halsey*, 2005 WL 2415938 *10 (DOL Adm. Rev. Bd.).

Case 3:06-cv-00205-JWS   Document 34   Filed 11/16/07   Page 3 of 14

On August 31, 2006, plaintiffs Ronald and Debbie Halsey filed a complaint under the Administrative Procedure Act ("APA"),[8] seeking judicial review of the ARB's Final Decision and Order.[9] This court has jurisdiction to review the ARB's final decision under 5 U.S.C. § 704. The parties filed cross-motions for summary judgment which are now ripe for decision.

### III.  STANDARDS OF REVIEW

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56© provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[10] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[11] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[12] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[13]

---

[8] 5 U.S.C. §§ 701-105.

[9] Doc. 1.

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11] *Id.* at 325.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[13] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

-4-

**Judicial Review of Final Agency Decision**

"The FLSA" does not authorize or preclude judicial review of final agency decisions."[14] The final decisions of the Department of Labor ("DOL") are therefore reviewable pursuant to Section 10© of the Administrative Procedures Act, which provides in pertinent part that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."[15] Under the APA, the reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence."[16] "The 'arbitrary and capricious' standard is appropriate for resolutions of factual disputes implicating substantial agency expertise."[17] "Purely legal questions are reviewed de novo."[18]

## IV. DISCUSSION

Plaintiffs brought this action under the APA, challenging both the ARB's finding that plaintiffs violated child labor laws and assessment of a civil money penalty. Plaintiffs specifically allege that the ARB erred in concluding that 1) plaintiffs are subject to coverage under the FLSA, 2) plaintiffs employed Gammon in oppressive child labor thereby violating Section 212© of the FLSA, 3) Gammon was an "employee" for purposes of the FLSA, and 4) plaintiffs were properly assessed a civil money penalty of $11,700 for violating the FLSA.[19] The court considers each of plaintiffs' assignments of errors below.

---

[14]*Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407 (9th Cir. 1996).

[15]*Id.* (quoting 5 U.S.C. § 704).

[16]5 U.S.C. § 706(2)(A) and (E); *Golden Northwest Aluminum, Inc. v. Bonneville Power Administration*, 501 F.3d 1037, 1045 (9th Cir. 2007).

[17]*Akiak Native Community v. U.S. Postal Service*, 213 F.3d 1140, 1144 (9th Cir. 2000).

[18]*Id.* (citing *Wagner v. National Transp. Safety Bd.*, 86 F.3d 928, 930 (9th Cir. 1996)).

[19]Doc. 1 at 2-3.

**Whether the ARB Erred in Concluding that Gammon Was Subject to Coverage under the FLSA**

Plaintiffs first contend, as they did before the ALJ and ARB, that the FLSA does not apply to the instant case because plaintiffs' fishing operation is not a covered enterprise. Plaintiffs specifically argue that "[a] commercial fishing enterprise engaged in commerce or the production of goods for commerce is not subject to the FLSA's child labor provisions unless the enterprise has a minimum annual gross sales volume of $500,000."[20] It is undisputed that plaintiffs' annual gross sales volume for 2001 and 2002 was far less than $500,000. In support of their argument, plaintiffs cite 29 U.S.C. § 203(s)(1)(A), which defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce...and...whose annual gross volume of sales made or business done is not less than $500,000."

Alternatively, plaintiffs argue that their fishing operation is not subject to the FLSA because plaintiffs themselves were the only "regular" employees of the business. In support, plaintiffs cite 29 U.S.C. § 203(s)(2), which provides that any establishment that has as its only "regular" employees the owners of the establishment "shall not be considered to be an enterprise engaged in commerce or in the production of goods for commerce or a part of such an enterprise."

Section 12 © of the FLSA states, "No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce."[21] Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."[22] Based on the plain language of the FLSA and its legislative history, the Ninth Circuit has ruled that "the FLSA provides two independent types of coverage, and that an employee who engages in commerce is

---

[20]Doc. 18 at 11.

[21]29 U.S.C. § 212(c).

[22]29 U.S.C. § 203(d).

-6-

individually covered [by the FLSA] regardless of whether his employer qualifies as a covered enterprise."[23] Accordingly, coverage exists under the FLSA's child labor provisions if either Gammon was employed in oppressive child labor in commerce (individual coverage) or if plaintiffs' fishing operation was an enterprise engaged in commerce (enterprise coverage).[24]

Here, the ALJ concluded that Gammon enjoyed individual coverage because he engaged in commerce for FLSA purposes. Pursuant to 29 U.S.C. § 203(b), "commerce" is defined as "trade, commerce, transportation, transmission, or communications among the several States or between any State and any place outside thereof." The ALJ based his ruling on the undisputed facts that Gammon picked and unloaded fish as part of his paid duties for plaintiffs, and those fish were sold to Ocean Beauty Seafoods, and then shipped from Alaska to Seattle, Washington. The ARB affirmed the ALJ's ruling on the grounds that "the Halseys' contention that their business does not qualify as 'an enterprise engaged in commerce,'... has no bearing on the ALJ's independent conclusion that Gammon engaged 'in commerce' and, therefore, is individually covered under the FLSA."[25]

Based on the undisputed facts, the court affirms the ALJ's finding that Gammon engaged in commerce for purposes of the FLSA, and "as a covered individual enjoyed the protection of the child labor provisions."[26] Because the ALJ and ARB correctly applied the appropriate substantive law and there are no genuine issues of material

---

[23]*Zorich v. Long Beach Fire Dept.*, 118 F.3d 682, 686 (9th Cir. 1997). *See also Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 914 (9th Cir. 2003) (holding that coverage exists under the FLSA if either the employee is engaged in commerce or the employer is an enterprise engaged in commerce); 29 C.F.R. § 570.113(b) ("[I]t may be generally stated that employees considered to be within the scope of the phrases 'in commerce or in the production of goods for commerce' for purposes of the wage and hours provisions are also included within the identical phrases used in section 12©.")

[24]*Chao*, 346 F.3d at 914.

[25]HALS 0000488.

[26]HALS 0000196.

fact, the ARB did not err in concluding that Gammon was subject to coverage under the FLSA, and defendant is entitled to summary judgment on the above issue.[27]

**Whether the ARB Erred in Concluding that Plaintiffs Employed Gammon in Oppressive Child Labor**

Plaintiffs next argue that the ARB erred in concluding that plaintiffs employed Gammon in oppressive child labor because Gammon's work in 2002 as a crew person "was not employment in an occupation connected with transportation."[28] The FLSA prohibits commerce involving "oppressive child labor," which is defined in pertinent part as:

> ...a condition of employment under which...any employee under the age of sixteen years is employed by an employer...The Secretary of Labor shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being.[29]

Pursuant to that authority, the Secretary promulgated a list of prohibited occupations for minors 14 and 15 years old, which included occupations in connection with the "[t]ransportation of persons or property by ...water."[30] The implementing regulation more specifically prohibits occupations involving "the performance of any duties on...vessels."[31]

---

[27] The court notes that because Gammon was subject to individual coverage under the FLSA, his employment as a 13 year old was plainly illegal under the Act and implementing regulations given that 29 C.F.R. § 570.199 explicitly provides that "employment of minors under 14 years of age is not permissible under any circumstances if the employment is covered by the child labor provisions and not specifically exempt."

[28] Doc. 18 at 18.

[29] 29 U.S.C. § 203(l).

[30] 29 C.F.R. § 570.33(f)(1).

[31] 29 C.F.R. § 570.33(f).

-8-

Plaintiffs argue that the "work of catching fish is not an occupation in connection with the transportation of person or property by water."[32] In support of their argument, plaintiffs cite a DOL publication entitled "Youth Employment Rules in Net Fishing." The publication states that the "youth employment provisions of the FLSA apply to minor employees whose work involves catching fish, working on fishing boats and/or the processing of fish that will leave the state directly or indirectly and become part of interstate commerce."[33] The DOL publication further states that under federal law, minors under 16 years of age "may not work in occupations...involving work (except sales work) in connection with: transportation of persons or property by rail, highway, air on water, pipeline or other means."[34]

Contrary to plaintiffs' argument, the DOL publication entitled "Youth Employment Rules in Net Fishing" is not inconsistent with 29 C.F.R. § 570.33(f). While both the DOL publication and regulation contemplate that youth may work in the fishing industry in some capacities, the regulation limits such work in the fishing industry to the performance of office work or sales work in connection with the transportation of persons or property by water which "does not involve the performance of any duties on...vessels."[35]

Moreover, DOL's Field Operations Handbook ("FOH") specifically states that occupations which are in connection with transportation within the meaning of 29 C.F.R. § 507.33(f)(1) include: (1) jobs performed on boats; (2) jobs performed in, on, or in close proximity to docks or wharves or such other places where power-driven equipment designed or used for transportation may be in motion; and (3) jobs in loading or unloading boats."[36] "The Secretary of Labor's interpretation of her own regulations is

---

[32]Doc. 18 at 21.

[33]HALS 0000134.

[34]HALS 0000135.

[35]29 C.F.R. § 570.33(f).

[36]FOH § 333b05; http://www.dol.gov/esa/whd/FOH

-9-

Case 3:06-cv-00205-JWS   Document 34   Filed 11/16/07   Page 9 of 14

entitled to deference and is controlling unless 'plainly erroneous or inconsistent with the regulation.'"[37] Here, "[t]here is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question."[38]

Plaintiffs' assertion that allowing minors to work in the net fishing business as contemplated in "Youth Employment Rules in Net Fishing" is meaningless if the minors cannot work aboard vessels asks the court to assume too much. There are myriad shore-based tasks a minor can perform at a set net site, including cleaning and mending nets, preparing and serving meals, moving and storing gear, and doing chores necessary for fish camp maintenance. Even giving the "Youth Employment Rules in Net Fishing" publication more weight than it is due,[39] plaintiffs have not made a showing that the Secretary's position is plainly erroneous or inconsistent with 29 C.F.R. § 570.33(f). Finally, while the court recognizes that the Secretary's interpretation may be incongruent with actual practices traditionally followed by many Alaskans engaged in set net fishing, that fact does not render the Secretary's position incorrect under the governing regulations and statutes.

Based on the DOL's reasonable interpretation of its own regulation and the application of 29 C.F.R. § 570.33(f) to the facts of this case, the ARB held that plaintiffs "employed Gammon in oppressive child labor in 2001 when he was 13 years of age in violation of the FLSA's child labor provisions at Sections 12© and 3(l) and when Gammon worked as a 14-year-old minor at the time of his drowning, in violation of the standards the Secretary set forth at 29 C.F.R. §§ 570.33(f)(1) and 570.119(f)(1)."[40]

Because the ARB correctly applied the appropriate substantive law and there are no genuine issues of material fact, the ARB did not err in concluding that plaintiffs

---

[37] *Klem v. County of Santa Clara, California*, 208 F.3d 1085, 1089 (9th Cir. 2000) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

[38] *Auer*, 519 U.S. at 462.

[39] DOL's publication, "Youth Employment Rules in Net Fishing," explicitly states that the publication is "provided for general information only and does not carry the force of legal opinion." HALS 000017.

[40] *Halsey*, 2005 WL 2415938 at *7.

-10-

Case 3:06-cv-00205-JWS   Document 34   Filed 11/16/07   Page 10 of 14

violated the FLSA when they knowingly employed Gammon as a 13 and 14 year old in an occupation in connection with the transporting of fish by water. Accordingly, the court will affirm the ARB's holding that plaintiffs violated the child labor provisions of the FLSA in 2001 and 2002. Defendant is thus entitled to summary judgment on the above issue.

**Whether the ARB Erred in Concluding that Gammon was an Employee for Purposes of the FLSA**

Plaintiffs next argue that the FLSA does not apply to the facts of this case because Gammon was a self-employed independent contractor and not an "employee." In support of their argument, plaintiffs cite the definition of "enterprise" in 29 U.S.C. § 203(r)(1), which excludes "the related activities performed for such enterprise by an independent contractor." Plaintiffs' assignment of error is without foundation and was properly dismissed by the ARB.

The FLSA defines "employee" as including "any individual employed by an employer,"[41] and "employ" as including "to suffer or permit to work."[42] In determining whether a person is an independent contractor or "employee" for purposes of the FLSA, courts have identified a number of factors that should be considered, including:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the employer's business.[43]

"Neither the presence nor the absence of any individual factor is determinative."[44] Rather, whether an employer-employee relationship exists depends "upon the

---

[41] 29 U.S.C. § 203(e)(1).

[42] 29 U.S.C. § 203(g).

[43] *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (quoting *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748 (9th Cir. 1979)).

[44] *Id.*

-11-

circumstances of the whole activity, and whether as a matter of economic reality, the individual is dependent upon the business to which she or he renders service."[45]

While the ALJ first expressed doubt as to "whether an unemancipated minor may be an independent contractor," the ALJ appropriately considered the above six factors. After an extensive analysis of the facts of this case in connection with the above factors, the ALJ concluded:

> Taken together with Samuel's age, these facts show that 1) the Halseys had virtually complete control of the manner in which Samuel's work was performed onboard their fishing vessel; 2) Samuel exercised no managerial skills bearing on his opportunities for profit or loss; 3) Samuel had no investment in materials or equipment required for his work; 4) no specialized skills were required for his work; 5) permanence of the relationship is not a significant factor here; and 6) Samuel's services comprised an integral part of the Halsey's fishing enterprise. Samuel was the Halseys' employee for purposes of the Act.[46]

The ARB affirmed the ALJ's determination that Gammon was plaintiffs' employee for purposes of the FLSA on the grounds that the "ALJ properly considered the relevant factors in conjunction with the undisputed material facts."[47]

Because the ALJ and ARB correctly applied the substantive law to the undisputed facts in this matter, the ARB did not err in concluding that Gammon was plaintiffs' employee within the meaning of the FLSA. After reviewing each of the above factors, the court concurs that Gammon was as a matter of economic reality dependent on the plaintiffs' fishing enterprise and therefore within the protections and benefits afforded by the FLSA. Defendant is entitled to summary judgment on this issue.

**Whether the ARB Erred in Affirming Civil Money Penalty of $11,700 for Plaintiffs' Violation of the FLSA**

In their motion for summary judgment, plaintiffs identify the following as an issue for review: "Did the ARB err in concluding that the [ALJ] properly assessed a civil

---

[45] *Id.* (internal citations and quotations omitted).

[46] HALS 0000199.

[47] *Halsey*, 2005 WL 2415938 at *8.

-12-

monetary penalty of $11,700 for the Halseys' violation of Section 212© of the FLSA?"[48] Plaintiffs did not, however, brief the above issue, nor offer any reasons why the assessment of a civil money penalty of $11,700 should not be affirmed.

The FLSA provides that an employer who violates child labor provisions shall be subject to civil penalties for each minor employed in violation of the FLSA or applicable regulations.[49] For any violation occurring after January 2002, the maximum civil money penalty for each employee who was the subject of a violation is $11,000.[50] The implementing regulation provides that in determining the amount of a penalty, several factors should be considered, including "the appropriateness of such penalty to the size of the business charged with the violation or violations" and "the gravity of the violation or violations."[51] In addition, the regulations provide that in determining the amount of a penalty, it shall also be determined whether the evidence shows that the violation is *de minimis*.[52]

Here, the ALJ initially noted that plaintiffs did not contest the $700 penalty assessed for plaintiffs' illegal employment of Gammon in 2001. The ALJ then considered the factors set forth in 29 C.F.R. § 579.5 for determining the amount of the penalty for plaintiffs' illegal employment of Gammon in 2002, when he was 14 years old and drowned. The ALJ stated that "[w]hen a child of 14 dies while employed in oppressive child labor, the maximum statutory penalty seems to be called for unless mitigating factors weigh heavily in the offender's favor."[53] The ALJ found that no mitigating factors weigh substantially in the plaintiffs' favor. The ALJ reasoned that the fact that the penalty for the 2002 violation could equal plaintiffs' 2002 season's earnings

---

[48]Doc. 18 at 3.

[49]29 U.S.C. § 216(e).

[50]29 C.F.R. § 579.5(a).

[51]29 C.F.R. § 579.5(b) and (c)

[52]29 C.F.R. § 579.5(d)(1).

[53]HALS 0000299.

was outweighed by the violation's tragic consequences and plaintiffs' knowledge of both Gammon's young age and the dangers inherent in commercial fishing. The ALJ further found that plaintiffs' violation of the FLSA "proved to be the opposite of a 'de minimis' one."[54] Based on the above factors, the ALJ ordered plaintiffs to pay a civil money penalty of $11,700.

The ARB affirmed the ALJ's order that plaintiffs pay a civil money penalty of $11,700 for their violations of 29 U.S.C. § 212© in 2001 and 2002 on the grounds that "the ALJ properly considered the relevant factors for determining the amount of the civil penalty for the Halseys' violations and the Halseys do not challenge the determination on appeal."[55]

Because the ALJ properly considered the relevant factors in determining the amount of the civil money penalty and the civil money penalty ordered by the ALJ comports with the FLSA and implementing regulations, the ARB did not err in affirming the civil money penalty of $11,700. Accordingly, the court will affirm the assessment of the civil money penalty of $11,700 for plaintiffs' violation of the FLSA in 2001 and 2002, and will grant defendant's motion for summary judgment.

## V.  CONCLUSION

For the reasons set out above, plaintiffs' motion for summary judgment at docket 18 is **DENIED**, and defendant's motion for summary judgment at docket 25 is **GRANTED**; plaintiffs shall pay a civil penalty of $11,700. The Clerk will please enter an appropriate judgment.

DATED at Anchorage, Alaska, this 16th day of November 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[54] HALS 0000300.

[55] *Halsey*, 2005 WL 2415938 at *10.

-14-